UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALJIT SINGH,<br><br>         Plaintiff,<br><br>    v.<br><br>CDCR, et al.,<br><br>         Defendants. | No. 2:23-cv-01624-EFB (PC)<br><br>ORDER |

Plaintiff, a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983, seeks leave to proceed in forma pauperis (ECF No. 2). As discussed below, the court grants his application and screens the complaint.

### Application to Proceed in Forma Pauperis

Plaintiff's application makes the showing required by 28 U.S.C. § 1915(a)(1) and (2), that plaintiff is unable to prepay fees and costs or give security therefor. Accordingly, plaintiff's motion for leave to proceed in forma pauperis is granted.

### Screening Standards

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief

1

may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

A pro se plaintiff, like other litigants, must satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a)(2) "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 562-563 (2007) (citing *Conley v Gibson*, 355 U.S. 41 (1957)). While the complaint must comply with the "short and plain statement" requirements of Rule 8, its allegations must also include the specificity required by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-557. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

Furthermore, a claim upon which the court can grant relief must have facial plausibility. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, *Erickson v. Pardus*, 551 U.S. 89 (2007), and construe the complaint in the light most favorable to the plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## Screening Order

Plaintiff sues four defendants who are employees of the California Department of Corrections and Rehabilitation (CDCR) at Mule Creek State Prison (MCSP):[1]  (1) Correctional

---

[1] The Court infers Plaintiff's use of the abbreviation "CDCR" to reference the California Department of Corrections and Rehabilitation, and the abbreviation "MCSP" is understood to reference Mule Creek State Prison.
Plaintiff was incarcerated at MCSP when he filed his complaint on August 7, 2023. ECF

2

Officer Bradley; (2) Correctional Officer Duclos; (3) Correctional Officer Martin; and (4) a "Jone Doe" member of the correctional staff having the rank of Sergeant, who perhaps has duties relating to inmate mental health.[2]  ECF No. 1 at 1, 2.

Plaintiff alleges that he experienced unspecified retaliation and abuse in June 2021, for the purpose of keeping him from working on his lawsuit against Dr. Ullery.[3]  *Id*. at 3.

Plaintiff alleges that on December 2, 2021, Dr. Smith and an otherwise unidentified Sergeant[4] told plaintiff they would provide higher level care for "his mental health crisis that day."  *Id*. at 4.  Plaintiff alleges defendant Duclos purposefully failed to transfer him to a mental health facility and instead kept plaintiff in housing where plaintiff suffered depression, psychological distress, trauma, assault, stolen property, victimization, and harassment.  *Id*.  Plaintiff alleges unidentified prison staff misinformed and/or misled his family about whether plaintiff would receive mental health treatment and/or whether he would be transferred to a higher-level treatment facility that week.  *Id*.

Plaintiff alleges that on December 8, 2021, he reported concerns for his safety to two correctional officers (Ali and McCarthy) who took plaintiff to the program office where defendant Bradley was working.  *Id*. at 5.  Bradley failed to help plaintiff or send plaintiff to administrative segregation, and instead Bradley and defendant Martin forcefully dragged plaintiff "to same A204" and threw plaintiff there to suffer.  *Id*.  Bradley made jokes, cursed plaintiff using

---

No. 1.  Plaintiff has notified the Court that as of February 5, 2024, he has been transferred to the California Substance Abuse Treatment Facility in Corcoran.  ECF No. 8.

[2]  Plaintiff's insertion of the phrase "CDCR MCSP STAFF" on the caption of his complaint, ECF No. 1 at 1, appears to be a reference to the official capacities of the individual defendants.  It does not appear that plaintiff intends to sue the CDCR itself, or the MCSP, or their collective staff.  *See id*. at 2.

[3]  This appears to be a reference to the lawsuit filed at *Singh v. Nicolas, et al*., No. 2:19-cv-02048-CSK (E.D. Ca. filed Oct. 12, 2019) [hereinafter the "*Nicolas* lawsuit"], alleging claims for constitutionally inadequate medical care by medical providers at MCSP, at ECF Nos. 1, 5, 51, 53.

[4]  It is unclear whether this is the Sergeant that plaintiff has designated as the "Jone Doe" defendant.

the "M-word," and embarrassed plaintiff in front of the whole section. *Id*. Plaintiff alleges that Bradley "wrote an incorrect report to cover" failures occurring in December 2021. *Id*. at 4.

Plaintiff alleges he had an MEPD[5] date of December 2021 and was ready to be paroled. *Id*. at 3. Plaintiff alleges that retaliation and harassment "further continued" as shown in plaintiff's prison grievances[6] including an Americans with Disabilities Act violation "that le[]d to Coalinga Hospital[7] for decompensation of his mental health." *Id*. Plaintiff alleges that an unidentified correctional officer further harassed and abused plaintiff "later on" after he filed grievances, causing plaintiff to feel afraid and anxious and to have panic attacks in the presence of correctional officers in the D-Yard at MCSP. *Id*. at 5.

Plaintiff further alleges that on an unspecified date he returned to MCSP from Coalinga Hospital and was "placed in same to be victimized and abused again forcefully." *Id*. at 7. Plaintiff told staff he did not feel safe in D-Yard and started having panic attacks. *Id*. He alleges that defendant Bradley saw plaintiff in D-Yard and "'started coughing loudly saying this m**********r is back and we going to get him again.'" *Id*.

Plaintiff alleges that on June 30, 2023 he had a crisis "around lockup in cage at program" and sought mental health assistance and to preserve video of an incident. *Id*. Plaintiff claims he was denied help and was sent to the "same place" but began having panic attacks once there. *Id*. Defendant Bradley allegedly threatened plaintiff with "RVR"[8] and sent plaintiff to "Ad-Seg."[9] *Id*. While plaintiff was in administrative segregation a clinician and an "IDTT team" told

---

[5] The Court construes this as a reference to a "Minimum Eligible Parole Date" hearing. *See* PAROLE ELIGIBILITY - Board of Parole Hearings, https://www.cdcr.ca.gov/bph/parole-eligibility/ (last checked July 19, 2024) .

[6] Plaintiff cites "log" numbers, ECF No. 1 at 3, which correspond to numbers assigned to his grievances, *see id*. at 12-13.

[7] The Court infers this as a reference to the Department of State Hospitals – Coalinga.

[8] The Court infers this as a reference to a Rules Violation Report. *See* Cal. Code Regs. Tit. 15, § 3312.

[9] The Court infers this as a reference to administrative segregation.

1    plaintiff he would not be returned to D-Yard because of his safety concerns, and an unidentified
2    Sergeant[10] also told plaintiff he would not be going back to D-Yard. *Id*. Plaintiff was placed in
3    B-Yard, although apparently there was some back-and-forth between D-Yard and B-Yard
4    because at some point unidentified correctional officers forcefully took plaintiff back to D-Yard.
5    *Id*. Plaintiff alleges he is currently in B-Yard. *Id*.

   Plaintiff alleges two additional events that are not clearly related to his other allegations.
First, plaintiff alleges that mail containing 85 pages of irreplaceable legal confidential documents
from his attorney was not processed by mailroom staff and was lost. *Id*. at 6. Second, plaintiff
alleges a "total data breach" of his data at MCSP and "HQ" and that he filed grievances. *Id*. at 3.
Plaintiff does not allege when either event occurred.

   Plaintiff requests damages, as well as injunctive relief in the form of a restraining order to
stop harassment, abuse, and victimization, and to be sent to Stockton Medical Facility or be
paroled and/or released. *Id*. at 8.

   Plaintiff appends to his complaint: (1) a July 25, 2023 letter from an attorney (Karan) to
the Secretary of CDCR (Macomber), ECF No. 1 at 9-16 [hereinafter the "Attorney Letter"]; (2)
documentation relating to a grievance (No. 324604) plaintiff filed on December 29, 2022, *id*. at
17-20; and (3) documentation relating to another grievance (No. 357979) plaintiff filed on March
31, 2023, *id*. at 21-25. Plaintiff does not explain nor reference the appended documents in his
complaint, except for a cursory reference to the two grievance numbers (along with referencing
two other grievance numbers for which plaintiff does not attach documentation to the complaint).
*See id*. at 3.

   The Attorney Letter cites six grievances filed by plaintiff between January 2022 and
January 2023 (including Nos. 324604 and 357979) and maintains that plaintiff's grievances are
not being properly addressed. *Id*. at 11-13. The Attorney Letter further cites the *Nicolas* lawsuit,
and demands that plaintiff be released on parole and/or transferred to a different institution. *Id*. at

---

[10] It is unclear whether this is the Sergeant that plaintiff has designated as the "Jone Doe" defendant.

10-11.

Grievance No. 324604 complains about the lack of any surveillance audio/video recording for December 8, 2021, that would show plaintiff complaining of harassment and stolen property to correctional officers Ali and McCarthy. *Id*. at 19-20; *see also id*. at 5 (Ali and McCarthy are the officers who took plaintiff to the program office to see defendant Bradley).

Grievance No. 357979 complains that plaintiff has not received appropriate response to his previous grievances against Bradley. *Id*. at 23, 25.

Access To The Courts

Inmates have a fundamental right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009). The right of access to the courts is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis*, 518 U.S. at 354-55. Prisoners must be allowed to litigate such claims without active interference by prison officials. *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds as recognized by Richey v. Dahne*, 807 F.3d 1201, 1209 n.6 (9th Cir. 2015).

A prisoner alleging a violation of his right of access to the courts must demonstrate that he has suffered "actual injury." *Lewis*, 518 U.S. at 349-50. The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded," *id*. at 353, and must "identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought," *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Plaintiff's complaint implies two distinct, but insufficiently alleged, claims regarding lack of access to the courts. First, plaintiff alleges that he was deliberately abused, victimized, and retaliated against in order to prevent him from working on his *Nicolas* lawsuit. ECF No. 1 at 3. *Nicolas* is a civil rights action, and plaintiff has a fundamental right to prosecute his case. It is unclear from plaintiff's complaint whether he is alleging interference with his work on the *Nicolas* lawsuit occurring in June 2021, December 2021, or both. *Id*. The complaint fails to allege any specific action by any of the defendants in June 2021, let alone any action that actually

6

frustrated or impeded plaintiff's ability to prosecute the *Nicolas* lawsuit.  The complaint does allege specific actions of defendants Bradley, Duclos, and Martin in December 2021, but fails to demonstrate that any of these actions in December 2021 frustrated or impeded plaintiff's ability to prosecute the *Nicolas* lawsuit.

Second, plaintiff alleges that, at some unspecified date, mailroom staff failed to process and lost an item of mail containing 86 irreplaceable pages of legal documents from his attorney. ECF No. 1 at 6.  Plaintiff's complaint fails to allege that the loss of this item of mail actually frustrated or impeded plaintiff's ability to prosecute a direct criminal appeal, habeas petition, or civil rights action, and he fails to allege that any of the defendants were responsible for failing to process and/or losing the item of mail.  For all these reasons, the complaint fails to state any claim for violation of plaintiff's right of access to the courts.

<u>Negligent Mail Handling</u>

Plaintiff does not appear to be claiming that his legal mail was withheld because of a prison regulation or policy. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989).  Rather, plaintiff's allegation is that mailroom staff (*i.e.*, not any of the defendants) were negligent in handling an item of mail.  ECF No. 1 at 6.  "Whether a person is injured in a custodial situation or not, the Court has been clear that mere negligence or mistakes on the part of the state actor does not give rise to a constitutional claim." *Murguia v. Langdon*, 61 F.4th 1096, 1121 (9th Cir. 2023) (citing *Daniels v. Williams*, 474 U.S. 327, 333 (1986)); *see also Lopez v. Allison*, 538 F. Supp. 3d 946, 949 (N.D. Cal. 2021) ("Neither negligence nor gross negligence is actionable under § 1983 in a prison context.").  The complaint fails to state any actionable claim under § 1983 regarding lost mail.

<u>Failure To Protect / Deliberate Indifference To Safety</u>

Plaintiff asserts Eighth Amendment deliberate indifference to safety claims against defendants Bradley and Duclos.  ECF No. 1 at 3, 4, 5, 7.  To establish a constitutional violation "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  An inmate's Eighth Amendment rights are violated by a prison official if that official exposes an

7

inmate to a "substantial risk of serious harm," while displaying "deliberate indifference" to that risk. *Id*. An official, however, is only liable if the "culpable action, or inaction[] is directly attributed to them" *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). Further, a plaintiff must have suffered some type of pain or harm that is more than de minimis in order to implicate the Eighth Amendment. *See, e.g.*, *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) ("delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference … unless the denial was harmful").

Plaintiff's deliberate indifference claims against defendants center around four distinct sets of events: (1) on December 2, 2021, plaintiff seems to have had a mental health crisis but defendant Duclos allegedly failed to transfer plaintiff to a mental health facility, which plaintiff characterizes as a denial of plaintiff's mental health placement, ECF No. 1 at 4; (2) on December 8, 2021, defendant Bradley failed to help plaintiff or to send plaintiff to administrative segregation in response to plaintiff's safety concerns and his complaint of stolen property, harassment, and assault, and Bradley instead returned plaintiff to his cell, made jokes, cursed, and used a racially derogatory slur against plaintiff, *id*. at 5; (3) on an unspecified date after plaintiff returned to MCSP from Coalinga Hospital, Bradley made another derogatory, potentially threatening remark ("this m**********r is back and we are going to get him again") while plaintiff was in the D-Yard, *id*. at 7; and (4) on or after plaintiff's mental health crisis of June 30, 2023, Bradley threatened plaintiff with a Rules Violation Report, *id*.

As to plaintiff's first potential deliberate indifference claim, the complaint makes a conclusory allegation that Duclos was responsible for denying plaintiff a mental health placement on December 2, 2021.[11] Even if this conclusory allegation is accepted on its face, the complaint fails to show that Duclos exposed plaintiff to a substantial risk of serious harm by returning plaintiff to his cell, or that Duclos was deliberately indifferent to that risk, or that plaintiff suffered anything more than de minimis harm or pain by being returned to his cell on December 2, 2021. According to plaintiff's complaint, he was transferred to Coalinga Hospital at some

---

[11] Plaintiff does not allege that Duclos is a medical or mental health care provider.

8

unspecified date, so a mental health placement may have been delayed but was not ultimately denied. A delay in transferring plaintiff to a mental health placement is insufficient to state a claim without showing that the delay was harmful. *See Shapley*, 766 F.2d at 407.

Similarly, plaintiff's second potential deliberate indifference claim is that Bradley returned plaintiff to his cell on December 8, 2021, instead of helping plaintiff or sending plaintiff to administrative segregation. The complaint makes a conclusory allegation that plaintiff complained to Bradley of concerns about stolen property, harassment, and assault, but does not sufficiently allege that plaintiff informed Bradley, or that Bradley was otherwise aware, of any specific and substantial risk of serious harm. The complaint fails to show that Bradley exposed plaintiff to a specific and substantial risk of serious harm by returning plaintiff to his cell, or that Bradley was deliberately indifferent to that risk, or that plaintiff suffered any specific injury – anything more than de minimis harm or pain – as a result of being returned to his cell on December 8, 2021.

Plaintiff's third deliberate indifference claim is a closer question. "[V]erbal harassment generally does not violate the Eighth Amendment" unless the comments are "unusually gross even for a prison setting and [] calculated to and did cause [] psychological damage." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)). Comments that disturb the prisoner's "peace of mind" are insufficient to state an Eighth Amendment claim. *Id*. Even abusive language directed at a prisoner's religious or ethnic background is insufficient to state a constitutional deprivation. *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997).

However, a plaintiff may state an Eighth Amendment failure to protect claim against a prison official for statements made to, or in the presence of, other prisoners that might incite violence against the plaintiff. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137-38 (9th Cir. 1989) (plaintiff stated an Eighth Amendment failure to protect claim against prison official who told other inmates that plaintiff was a snitch, with the intention of having the plaintiff killed); *see also Polk v. Lattimore*, 713 F. App'x 635 (9th Cir. 2018) (plaintiff's allegation that correctional officer "put a 'snitch jacket'" on plaintiff, leading to an assault on plaintiff, should have been

considered as a plausible Eighth Amendment claim upon screening); *Long v. Gray*, No. CV 20-00097-PHX-SMB, 2022 WL 872006, at *9, 15 (D. Ariz. Mar. 1, 2022) (prison official who stated in front of other prisoners that plaintiff was a child rapist may have created a substantial risk of serious harm to plaintiff).  A plaintiff need not allege a physical injury that followed the endangering statement.  *See Douglas v. Oregonian Pub. Co.*, 465 F. App'x 714, 715 (9th Cir. 2012) (prisoner stated claim against state officials who falsely labeled plaintiff a snitch, leading to threats from other inmates (citing *inter alia Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061, 1064 (9th Cir. 2006) for authority that the state must protect individuals against known and obvious state-created danger)); *Valandingham*, 866 F.2d at 1138 (inmate who was merely threatened by other inmates after "snitch" labeling stated a claim for violation of his right to be protected from violence); *see also Gonzales v. California Department of Corrections*, 739 F.3d 1226, 1235 (9th Cir. 2014) (prison officials who pressured inmate to become a snitch placed inmate at risk of harm from other inmates sufficient to state an Eighth Amendment claim).  Most of the cases about endangering statements involve "snitch" remarks, but other similarly endangering comments have been found to support an Eighth Amendment claim.  *See Long*, 2022 WL 872006, at *9 (prisoner identified as a child rapist to other prisoners).

      Alternatively, statements creating endangerment and/or making threats may in and of themselves be "unusually gross for the prison setting" and calculated to cause psychological damage, and thus support a deliberate indifference claim under *Keenan*, 83 F.3d at 1092.  *See Pangborn v. Peterson*, 2:23-cv-2976 KJN P, 2024 WL 1333294, at *4 (E.D. Cal. Mar. 28, 2024) (colorable Eighth Amendment claim based on correctional officers' threats to assault and kill prisoner if prisoner reported a use of excessive force, citing *Kennan*); *Brennan v. Aston*, No. 17-cv-1928-JCC-MLP, 201 WL 5225047, at *8-9 (W.D. Wash. Aug. 16, 2019) (prisoner stated claim for deliberate indifference against deputy who loudly asked outside prisoner's cell whether prisoner wanted to attend meeting with two detectives, leading to threats from other inmates and a severe decline in prisoner's mental health).

      Bradley's alleged comment in the D-Yard is reasonably construed to have been made in the presence of other inmates and could be construed as a signal to other inmates that correctional

staff would tolerate or condone abuse, and perhaps even violence, against plaintiff. Plaintiff's complaint also alleges mental health issues and safety concerns about going back to the D-Yard. ECF No. 1 at 7. Liberally construed and for purposes of screening the complaint, plaintiff's complaint states a colorable Eighth Amendment claim for failure to protect, based on Bradley's comment, under either or both *Keenan*, or the *Valandingham* line of cases.

Plaintiff's fourth potential deliberate indifference claim is that Bradley "threatened" to make a Rules Violation Report against plaintiff. A "threat" of a Rules Violation Report is in and of itself an entirely insufficient basis for a claim that Bradley created a substantial risk of serious harm to plaintiff. The complaint fails to allege that the threatened Rules Violation Report somehow related to plaintiff's efforts to seek mental health assistance at about the same time or was based on something else, or somehow exposed plaintiff to any substantial risk of serious harm, or displayed deliberate indifference by Bradley, so as to support an Eighth Amendment claim.

For all these reasons, the complaint states a cognizable Eighth Amendment claim of deliberate indifference to a substantial risk of serious harm pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b) against defendant Bradley for the comment in the D-Yard after plaintiff returned from Coalinga Hospital, but fails to state any other Eighth Amendment deliberate indifference claim.

Excessive Force

Plaintiff asserts an insufficiently alleged Eighth Amendment excessive force claim against defendants Bradley and Martin. ECF No. 1 at 5. For an excessive force claim, plaintiff must show that the officer applied the force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Id*. at 7; *see also id*. at 9-10 ("The Eighth Amendment prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical

force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citation omitted)).

Plaintiff's allegations are that Bradley and Martin forcefully dragged plaintiff back to his cell and forcefully threw him into the cell on December 8, 2021.  ECF No. 1 at 5.  These allegations are too vague and conclusory to establish the required elements for an excessive force claim, and specifically fail to demonstrate that the force applied by defendants Bradley and Martin was disproportionate to the situation.  Plaintiff makes other similar allegations that unidentified correctional staff dragged him into or out of his cell, or forcefully moved him.  *Id*. at 5, 7.  These allegations fail for similar reasons, and because plaintiff does not allege that any of the defendants were responsible.  For all these reasons, the complaint fails to state any claim for excessive use of force against any of the defendants.

Retaliation

Plaintiff's complaint contains two insufficiently alleged retaliation claims.  An inmate's First Amendment claim of retaliation requires the inmate to show:  "(1) [a]n assertion that a state actor took some adverse action against the inmate; (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005).  The inmate must show evidence of retaliatory motive that is not merely pretextual.  *Long v. Sugai*, 91 F.4th 1331, 1339 (9th Cir. 2024).  A mere sequence of events is insufficient to show retaliatory movie.  *Id*.  As to the last factor, legitimate correctional goals include maintaining order and safety within the prison.  *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

Plaintiff's first retaliation claim is that he experienced retaliation in 2021 related to the *Nicolas* lawsuit.  ECF No. 1 at 3.  It is unclear whether plaintiff is alleging the retaliation occurred in June 2021, December 2021, or both.  Plaintiff alleges "retaliation abuse" to victimize him deliberately in unspecified ways by unidentified persons, and that this was done to prevent plaintiff from working on his lawsuit.  *Id*.  Plaintiff references grievance numbers and an ADA violation report that "show" the retaliation.  *Id*.  Plaintiff's prosecution of the *Nicolas* lawsuit is

12

protected conduct. However, plaintiff's allegations fail to show that any of the defendants took any adverse action against plaintiff *because of* plaintiff's prosecution of the *Nicolas* lawsuit, or that an adverse action chilled any First Amendment right such as plaintiff's prosecution of the *Nicolas* lawsuit.

Plaintiff's second retaliation claim is that defendant Bradley "further retaliated" against plaintiff "further on." ECF No. 1 at 3, 4. This claim is completely unsupported by factual allegations showing adverse action by Bradley because of the *Nicolas* lawsuit or any other protected activity, that chilled plaintiff's First Amendment rights. For all these reasons, the complaint fails to state a First Amendment retaliation claim against any of the defendants.

<u>Due Process – Bradley's "Incorrect Report"</u>

Plaintiff alleges that Bradley wrote an "incorrect report" regarding the events of December 2021. ECF No. 1 at 3. Plaintiff does not specify the nature of the report. For purposes of screening plaintiff's complaint, the Court infers that Bradley submitted some form of official report, but the Court cannot infer the precise nature of the official report – perhaps this was a Rules Violation Report, but it might have been some other type of report. Because the complaint does not adequately describe the report or why it was incorrect, it is unclear what sort of claim plaintiff might be able to allege based on the report.

To state a claim for violation of the Fourteenth Amendment right to procedural due process, plaintiff must allege facts showing: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003). Plaintiff does not allege whether he experienced any adverse consequence as a result of the incorrect report, let alone any deprivation of a constitutionally protected liberty or property interest and a denial of adequate procedural protections. For all these reasons, the complaint fails to state a due process claim – or any other constitutional claim – based on the "incorrect report."

////

////

13

<u>Due Process – Yard And Housing Assignments</u>

Plaintiff's allegations regarding his re-assignment from D-Yard to B-Yard on or about June 30, 2023, are too vague and ambiguous to state any § 1983 claim against any of the defendants, including because the complaint fails to allege whether any of the defendants was responsible for yard assignments. It is unclear from the complaint whether yard assignments are dependent on housing assignments. In other words, whether plaintiff's assignment to D-Yard versus B-Yard or another yard depends on whether he is housed in a particular location within the prison.

Plaintiff does not allege any deprivation of a constitutionally protected liberty or property interest and a denial of adequate procedural protections in connection with his yard assignment, so as to state a Fourteenth Amendment procedural due process claim. *See Kildare*, 325 F.3d at 1085. Plaintiff's allegations regarding his yard or housing assignment at MCSP would be appropriately addressed within the Eighth Amendment conditions of confinement claims addressed above, rather than any potential Fourteenth Amendment substantive due process claim. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under that provision, not under the rubric of substantive due process."). For similar reasons, plaintiff's allegations about being housed in MCSP versus another facility, at any particular point in time, do not state a claim that is independent of his Eighth Amendment claims, because prisoners have no Fourteenth Amendment liberty interest in being housed in a particular institution. *See Olin v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225-27 (1976).

<u>Due Process – MEPD Date</u>

Plaintiff alleges he had an MEPD date of December 2021 and was ready to be paroled. ECF No. 1 at 3. The complaint makes no further allegation regarding the MEPD date, and fails to state any claim against any defendant regarding any lack of due process or any other constitutional claim related to the December 2021 MEPD date.

////

Loss Of Property

The complaint suggests that plaintiff was "faced with" a theft of unspecified property, but does not allege whether the property was stolen by inmates or by correctional staff, let alone by any of the defendants. ECF No. 1 at 5. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987). Plaintiff has not alleged any facts which suggest that any of the defendants deprived him of property or, if so, that the property deprivation was authorized. The California Legislature has provided a remedy for tort claims against public officials in the California Government Code, §§ 900, *et seq*. Since plaintiff does not allege any attempt to seek redress in the state system, he cannot sue in federal court on the claim that the state deprived him of property without due process of the law. The court concludes that this claim must, therefore, be dismissed as frivolous. *See* 28 U.S.C. § 1915(e)(2).

Data Breach

Plaintiff makes a bare allegation of a "total data breach" without even specifying what type or form of data was breached, how or by whom or to whom the data was breached, whether there was a duty to maintain the data as confidential, or any other factual information that might describe his claim. See ECF No. 1 at 3. The Court notes that, to the extent the data breach might have involved plaintiff's health information, the Health Insurance Portability and Accountability Act ("HIPAA") does not provide a private right of action. *Ebb v. Smart Document Solutions*, LLC, 499 F.3d 1078, 1081 (9th Cir. 2007). Further, plaintiff has not alleged he was deprived of a property or liberty interest that is protected by the Fourteenth Amendment Due Process Clause.

15

*See Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997). For these reasons, the complaint fails to state a cause of action regarding the alleged data breach.

<u>Summary of Screening Order</u>

In summary, plaintiff may either proceed with the potentially cognizable claim identified above, which is an Eighth Amendment claim of deliberate indifference to a substantial risk of serious harm against defendant Bradley based on Bradley's alleged remark made in the D-Yard after plaintiff was returned to MCSP from Coalinga Hospital ("this m**********r is back and we are going to get him again"), or plaintiff may amend his complaint in an attempt to state additional claims for relief. Plaintiff may not, however, change the nature of this suit by alleging new, unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff is not obligated to amend his complaint.

<u>Leave to Amend</u>

If Plaintiff chooses to file an amended complaint, he should note that any amended complaint must identify as a defendant only persons who personally participated in a substantial way in depriving him of a federal constitutional right. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation). The amended complaint must contain a caption including the names of all defendants. Fed. R. Civ. P. 10(a). The amended complaint should also describe, in sufficient detail, how each defendant personally violated or participated in the violation of his rights. The Court will not infer the identity of defendants, nor the existence of allegations that have not been explicitly set forth in the amended complaint.

Plaintiff may not change the nature of this suit by alleging new, unrelated claims. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Nor may he bring multiple, unrelated claims against more than one defendant. *Id*. The amended complaint should include only claims that are related because they concern the same event (or series of related events) or the same defendant.

////

Any amended complaint must be written or typed so that it is complete in itself without reference to any earlier filed complaint, and must include the allowed claim against defendant Bradley. E.D. Cal. L.R. 220. This is because an amended complaint supersedes any earlier filed complaint, and once an amended complaint is filed, the earlier filed complaint no longer serves any function in the case. *See Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997) (the 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'") (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)). The amended complaint must explain the relevance of any document appended to it. The Court will not infer any allegation or claim based solely on the content of documents attached to the amended complaint.

Finally, the court notes that any amended complaint should be as concise as possible in fulfilling the above requirements. Fed. R. Civ. P. 8(a). Plaintiff should avoid the inclusion of procedural or factual background which has no bearing on his legal claims. The court cautions plaintiff that failure to comply with the Federal Rules of Civil Procedure, this court's Local Rules, or any court order may result in this action being dismissed. *See* Local Rule 110.

<u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's application to proceed *in forma pauperis* (ECF No. 2) is GRANTED.

2. Plaintiff's complaint (ECF No. 1) alleges, for screening purposes, the following potentially cognizable claim:

   a. an Eighth Amendment claim of deliberate indifference to a substantial risk of serious harm against defendant Bradley based on Bradley's alleged remark made in the D-Yard after plaintiff was returned to MCSP from Coalinga Hospital ("this m**********r is back and we are going to get him again").

3. All other claims (including those against defendants Duclos, Martin, and the Jone Doe defendant, are dismissed with leave to amend within 30 days of service of this order. Plaintiff is not obligated to amend his complaint.

4. Within thirty days plaintiff shall return the notice below advising the court whether he elects to proceed with the cognizable claim or file an amended complaint. If the former

option is selected and returned, the court will enter an order directing service at that time.

5. Failure to comply with this order may result in dismissal of this action for the reasons stated herein.

Dated: July 19, 2024

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALJIT SINGH,<br><br>    Plaintiff,<br><br>    v.<br><br>CDCR, et al.,<br><br>    Defendants. | No. 2:23-cv-01624-EFB (PC)<br><br>NOTICE OF ELECTION |

In accordance with the court's Screening Order, plaintiff hereby elects to:

(1) _____ proceed only with the specific claim identified in the Screening Order against defendant Bradley.

OR

(2) _____ delay serving any defendant and file an amended complaint.

_____
                            Plaintiff

Dated:

19