UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BALJIT SINGH,

           Plaintiff,

    v.

CDCR, et al.,

           Defendants.

No. 2:23-cv-01624-DC-EFB (PC)

ORDER

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. The court found that plaintiff's original complaint stated one potentially cognizable claim (against defendant Bradley for violation of the Eighth Amendment) and dismissed the remaining claims with leave to amend. ECF No. 10. Plaintiff has filed an amended complaint, a request for screening, and a motion to appoint counsel. ECF No. 15, 19, 21.

## I.      Motion to Appoint Counsel

District courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. *Mallard v. United States Dist. Court*, 490 U.S. 296, 298 (1989). In exceptional circumstances, the court may request an attorney to voluntarily to represent such a plaintiff. *See* 28 U.S.C. § 1915(e)(1); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wood v. Housewright*, 900 F.2d 1332, 1335-36 (9th Cir. 1990). When determining whether "exceptional circumstances" exist, the court must consider the likelihood of success on the merits as well as the

1    ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues

2    involved. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). Plaintiff has failed to show

3    exceptional circumstances.

4    **II.    Screening Standards**

5        Federal courts must engage in a preliminary screening of cases in which prisoners seek

6    redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

7    § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion

8    of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which

9    relief may be granted," or "seeks monetary relief from a defendant who is immune from such

10    relief." *Id.* § 1915A(b).

11        This standard is echoed in 28 U.S.C. § 1915(e)(2), which requires that courts dismiss a

12    case in which a plaintiff proceeds in forma pauperis at any time if it determines, among other

13    things, that the action "is frivolous or malicious," "fails to state a claim on which relief may be

14    granted," or "seeks monetary relief against a defendant who is immune from such relief." "[The]

15    term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion,

16    but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)

17    (discussing the predecessor to modern § 1915(e)(2), former § 1915(d)). Thus, § 1915(e)(2)

18    allows judges to dismiss a claim based on factual allegations that are clearly baseless, such as

19    facts describing "fantastic or delusional scenarios." *Id.* at 327-38.

20        A pro se plaintiff, like other litigants, must satisfy the pleading requirements of Rule 8(a)

21    of the Federal Rules of Civil Procedure. Rule 8(a)(2) "requires a complaint to include a short and

22    plain statement of the claim showing that the pleader is entitled to relief, in order to give the

23    defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

24    *Twombly*, 550 U.S. 544, 554, 562-563 (2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)).

25    While the complaint must comply with the "short and plaint statement" requirements of Rule 8,

26    its allegations must also include the specificity required by *Twombly* and *Ashcroft v. Iqbal*, 556

27    U.S. 662, 679 (2009).

28        To avoid dismissal for failure to state a claim a complaint must contain more than "naked

2

1 | assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of

2 | action." *Twombly*, 550 U.S. at 555-557.  In other words, "[t]hreadbare recitals of the elements of

3 | a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at

4 | 678.

5 | Furthermore, a claim upon which the court can grant relief must have facial plausibility.

6 | *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual

7 | content that allows the court to draw the reasonable inference that the defendant is liable for the

8 | misconduct alleged." *Iqbal*, 556 U.S. at 678.  When considering whether a complaint states a

9 | claim upon which relief can be granted, the court must accept the allegations as true, *Erickson v.*

10 | *Pardus*, 551 U.S. 89 (2007), and construe the complaint in the light most favorable to the

11 | plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

12 | **III.    Screening of the Amended Complaint**

13 | Plaintiff's presentation of his claims is somewhat garbled and nonlinear.  He labels 13

14 | different causes of action, but some of those causes of action do not allege separate factual or

15 | legal theories.  For clarity, the court will restate the allegations in a linear narrative and address

16 | the potential federal causes of action they present.

17 | *A.  Allegations*

18 | Plaintiff claims that he was the target of "retaliation, abuse, [and] discrimination" in the

19 | D-Yard of Mule Creek State Prison ("MCSP") between November 2021 and February 2023.

20 | ECF No. 15 at 4.  He alleges that the misconduct toward him began after he filed *Baljit Singh v.*

21 | *Nicolas Aguilera, et al.,* E.D. Cal. Case No. 2:19-cv-02048-CSK ("*Singh I*").  (According to

22 | plaintiff, he filed *Singh I* in June 2021; the docket in that action reveals that he filed the case in

23 | October 2019 but filed an amended complaint in June 2021.)  Plaintiff charges defendant prison

24 | staffers Bradley, Duclos, McCathy, Martin, Charon, Ullery, T. Cooper, Cooper (ADA

25 | Counselor), Townsend, Alreano and Smith with participating in the retaliatory conduct.  He

26 | asserts supervisorial liability against Warden Covello (and presumably CDCR Secretary Kathleen

27 | Allison, although the complaint contains no factual allegations against her).  ECF No. 15 at 18.

28 | He alleges that various acts of misconduct also violated the Eighth Amendment, the Due Process

1    Clause of the 14th Amendment, and the Americans with Disabilities Act.  Lastly, he asserts

2    claims of mail mishandling against defendants Hutchison and John Doe.  Plaintiff's specific

3    allegations follow.

4         In November 2021, defendant Ullery retaliated against plaintiff by deliberately disclosing

5    plaintiff's confidential information to "PIA workers."  ECF No. 15 at 10.  Ullery also retaliated

6    against plaintiff by using medical staff Spena to give plaintiff a wrong injection on an unspecified

7    date, which made plaintiff sick.  *Id.*  Lastly, Ullery retaliated against plaintiff by denying his

8    request for surgery for his perforated ear drum.  *Id.*

9         On December 2, 2021, defendant "Duclos watched as another cellmate, Ismail,

10   threaten[ed] to harm Singh."  *Id.* at 5.  Duclos and defendant Bradley failed to transfer plaintiff to

11   the higher level of mental health care building ("HLC Building") and left plaintiff in a six-man

12   dorm where he was assaulted and harmed and his property was stolen.  *Id.* at 5, 7.  On December

13   14, 2021, Bradley issued a false rules violation report ("RVR") to plaintiff concerning the

14   December 2nd incident in order to retaliate against plaintiff and cover up for his and Duclos's

15   failure to transfer plaintiff to the HLC Building.  *Id.* at 7.  On January 11, 2022, defendant Charon

16   held a hearing concerning the RVR.  *Id.* at 8.  Charon "violated due process and failed to find

17   facts of incident of December 2nd 2021," failed to review video footage, and deliberately did not

18   call any witnesses.  *Id.*  Charon found plaintiff guilty of the charge and assessed 90 days time

19   credits loss and 60 days loss of phone privileges.  *Id.*

20        On or about December 8, 2021, plaintiff told defendant McCathy and another correctional

21   officer, Ali[1], that he had safety concerns after being harassed, threatened, and assaulted in the six-

22   man dorm.  *Id.* at 6.  Plaintiff was taken to a holding cage in the program office where Bradley

23   was working.  *Id.*  Bradley and Martin forcefully dragged plaintiff back to the dorm.  *Id.*  Bradley

24   joked, cursed, and embarrassed plaintiff.  *Id.*  McCathy and Ali witnessed but did not protect

25   plaintiff.  *Id.*

26   ////

27

28   ---
     [1] Plaintiff has not named Ali as a defendant in this action.  ECF No. 15 at 3.

1    At some unspecified time, Bradley opened mail sent on plaintiff's behalf from attorney

2  Charles Bonneau to the MCSP warden, complaining of the incidents of December 2nd and 8th.

3  *Id.* at 7.  The mail disappeared; Bradley did not give it to the warden.  *Id.*

4    Between December 2021 and 2022, plaintiff's and his family's information was

5  compromised and leaked in a CDCR data breach.  *Id.* at 9.  "ADA workers" Calvin and Terry[2]

6  spread plaintiff's confidential mental health records and C-file in D-Yard, "working directly

7  under C/O Bradley," because Bradley wanted to retaliate against plaintiff for a staff complaint

8  plaintiff had filed against him.  *Id.*

9    In May 2022, plaintiff was moved "for no reason" to a "white-supremacist gang member

10  6-man dorm."  *Id.* at 11.  Defendant ADA Counselor Cooper refused to move plaintiff.  *Id.*  On

11  October 29, 2022, in response to a request by one of plaintiff's cellmates, Bradley forced plaintiff

12  to sign a "co-existence chrono" to move to a new cell under threat of an RVR.  *Id.* at 12.  Bradley

13  and defendant correctional officer Townsend would not provide a copy of the chrono to plaintiff.

14  *Id.*  A few days later, Townsend issued a false RVR to plaintiff, claiming that plaintiff had

15  requested a bed move.  *Id.*  The RVR was later "dropped to counseling only level."  *Id.*

16    On January 4, 2023, plaintiff was taken to a holding cage in the program office.  *Id.* at 13.

17  T. Cooper told plaintiff that he was supposed to be in a crisis bed.  *Id.*  Bradley and T. Cooper

18  threatened plaintiff with an RVR and housing in administrative segregation if plaintiff did not

19  "sign a document."  *Id.*

20    On January 15, 2023, plaintiff told defendant correctional officer Alreano that he had

21  severe body pain.  *Id.*  Alreano told plaintiff to wait until Monday for treatment because it was

22  "just heart burn."  *Id.*  Plaintiff passed out and almost died the same evening.  *Id.*

23    On June 30, 2023, plaintiff returned to MCSP after some time in Coalinga State Hospital.

24  *Id.* at 14.  He told staff at MCSP's receiving area that he feared for his safety in D-Yard, but he

25  was sent there anyway.  *Id.*  When he arrived, Bradley said, "This motherfucker is back and we

26  going to get him again."  *Id.*  Plaintiff had a mental health crisis and sought care from defendant

27

28    [2] Plaintiff has not named Calvin and Terry as defendants.  ECF No. 15 at 3.

1    Dr. Smith.  *Id.*  Plaintiff told her he was suicidal.  *Id.*  Smith did not provide plaintiff with proper

2    care and instead spoke to Bradley, shook his hand, and left.  *Id.* at 14, 16.  Plaintiff suffered a

3    panic attack and was taken to administrative segregation.  *Id.* at 14.  Bradley issued plaintiff an

4    RVR.  *Id.*

5       On July 3, 2023, plaintiff was supposed to be sent to a crisis bed, but defendant Smith

6    cancelled it.  *Id.* at 16.  Plaintiff "end[ed] up hurting himself that evening."  *Id.*  "Sergeant Joe"[3]

7    threatened to return plaintiff to D-Yard.  *Id.*

8       Lastly, plaintiff claims his mail or legal property was mishandled on three occasions.  *Id.*

9    at 19.  First, on April 19, 2022, defendant Hutchison, staff in the MCSP mailroom, improperly

10   returned plaintiff's incoming legal mail to the sender.  *Id.*  Second, on August 28, 2023,

11   correctional officer John Doe at the Substance Abuse Treatment Facility ("SATF") "deliberately"

12   lost a box of plaintiff's legal material.[4]  *Id.*  The box contained undescribed but irreplaceable

13   material that is now permanently lost.  *Id.*  Third, in August or September of 2023, unidentified

14   correctional officers at MCSP's receiving area failed to give plaintiff his legal materials.  *Id.*

15   Plaintiff does not describe the legal materials or how they related to any case he was pursuing.

16      *B.  Analysis*

17      <u>Liability Under § 1983</u>.  To state a claim under § 1983, a plaintiff must allege: (1) the

18   violation of a federal constitutional or statutory right; and (2) that the violation was committed by

19   a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v.*

20   *Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil

21   rights claim unless the facts establish the defendant's personal involvement in the constitutional

22   deprivation or a causal connection between the defendant's wrongful conduct and the alleged

23   constitutional deprivation.  *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v.*

24   *Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).  That is, plaintiff may not sue any official on the

25   theory that the official is liable for the unconstitutional conduct of his or her subordinates.

26

27      [3] Plaintiff does not name Joe as a defendant in this action.  ECF No. 15 at 3.

28      [4] Plaintiff had been transferred to SATF.  ECF No. 15 at 19.

1   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).  In sum, plaintiff must identify the particular

2   person or persons who violated his rights.  He must also plead facts showing how that particular

3   person was involved in the alleged violation.

4       Because plaintiff has asserted liability against defendant Covello and (presumably)

5   defendant Allison based solely on their positions as supervisors, his claims against Covello and

6   Allison must be dismissed.  Plaintiff's claims against Allison must be dismissed for the additional

7   reason that the complaint contains no allegations concerning her.

8       <u>*Heck*-barred Claims</u>.  Success on plaintiff's claim that he was wrongfully disciplined in

9   connection with the December 2, 2021 incident would invalidate defendant Charon's revocation

10  of time credits and therefore shorten plaintiff's sentence.  Accordingly, plaintiff must show that

11  the disciplinary finding has been invalidated (for example, through the granting of a petition for

12  writ of habeas corpus or the prison's administrative processes) before he can proceed with a §

13  1983 claim based on this incident.  *Hebrard v. Nofziger*, 90 F.4th 1000, 1004 (9th Cir. 2024).

14  Plaintiff has not alleged that the disciplinary action has been invalidated, and thus his claims

15  against Bradley, Duclos, and Charon based on the December 2nd incident must be dismissed

16  without prejudice; plaintiff may raise these issues in a petition for writ of habeas corpus.

17      <u>Retaliation Claims</u>.  To state a viable First Amendment retaliation claim, a prisoner must

18  allege five elements: "(1) An assertion that a state actor took some adverse action against an

19  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

20  inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

21  legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

22  Conduct protected by the First Amendment includes communications that are "part of the

23  grievance process."  *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).

24      Construed liberally, and for the purposes of § 1915A screening only, plaintiff has stated

25  potentially cognizable retaliation claims against defendant Bradley in connection with the

26  December 8, 2021 incident, for opening mail sent on plaintiff's behalf from an attorney to the

27  warden, for causing the spread of plaintiff's confidential mental health records in D-Yard, and/or

28  for conduct on June 30, 2023 when plaintiff returned to MCSP.  Plaintiff has also stated

1    potentially cognizable retaliation claims against defendant Ullery.

2          Eighth Amendment Claims.  "[T]he Eighth Amendment's ban of cruel and unusual

3    punishment prohibits conditions of confinement that pose unreasonable threats to inmates'

4    health." *McKinney v. Anderson*, 924 F.2d 1500, 1507 (9th Cir.1991).  "Persons involuntarily

5    confined by the state have a constitutional right to safe conditions of confinement." *Hoptowit v.*

6    *Spellman*, 753 F.2d 779, 784 (9th Cir. 1985). To state an Eighth Amendment claim of cruel and

7    unusual punishment, a prisoner must demonstrate that prison officials were deliberately

8    indifferent to the allegedly unconstitutional prison conditions. *Wilson v. Seiter*, 111 S.Ct. 2321,

9    2326 (1991).

10          To state a claim of excessive force in violation of the Eighth Amendment, a plaintiff must

11    allege facts that show that a correctional officer used force against him maliciously and

12    sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline.

13    *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  To determine whether the evidence establishes

14    such a scenario, the factfinder may consider: (1) the need for force; (2) the relationship between

15    that need and the amount of force used; (3) the threat reasonably perceived by the officer; (4) the

16    extent of injury suffered by the plaintiff; and (5) any efforts made to temper the severity of the

17    forceful response.  *Id.* at 7.  Plaintiff has again failed to allege sufficient facts to make out an

18    excessive force claim.  He states that Bradley and Martin "forcefully dragg[ed]" him back to his

19    housing on December 8, 2021 while McCathy did not intervene, but (as with the original

20    complaint) plaintiff fails to allege facts indicating that the force was exerted maliciously and

21    sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline.

22          Prison officials are obligated by the Eighth Amendment to take reasonable measures to

23    protect prisoners from violence by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833

24    (1994).  To state a failure-to-protect claim against an official, an inmate must allege: (1) that he

25    was incarcerated under conditions posing a substantial risk of serious harm and (2) that the

26    official was deliberately indifferent to his safety.  *Id.*  "Deliberate indifference" occurs when an

27    official knows of and disregards an excessive risk to an inmate's safety.  *Id.* at 837.  "[T]he

28    official must both be aware of facts from which the inference could be drawn that a substantial

1    risk of serious harm exists, and he must also draw the inference."  *Id.*  Liberally construed, and

2    for the purposes of screening only, plaintiff has stated a potentially cognizable failure-to-protect

3    claim against defendant McCathy for returning plaintiff to his housing after plaintiff informed

4    McCathy that he had been threatened and assaulted there.  Plaintiff has also stated a potentially

5    cognizable failure-to-protect claim based on Bradley's "we going to get him again" comment on

6    June 30, 2023.

7            To state an Eighth Amendment claim predicated on indifference to medical needs, a

8    plaintiff must allege facts showing that: (1) he had a serious medical need and (2) the defendant's

9    response to that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

10   2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the

11   failure to treat the condition could result in further significant injury or the unnecessary and

12   wanton infliction of pain.  *Jett*, 439 F.3d at 1096.  To act with deliberate indifference, a prison

13   official must both be aware of facts from which the inference could be drawn that a substantial

14   risk of serious harm exists, and he must also draw the inference.  *Farmer v. Brennan*, 511 U.S.

15   825, 837 (1994).  Liberally construed, and for screening purposes only, plaintiff has stated

16   potentially cognizable Eighth Amendment claim against defendants Ullery and Smith.

17           Due Process Claims.  "The issuance of a false RVR, alone, does not state a claim under §

18   1983."  *Murschel v. Paramo*, No. 3:17-CV-1142 BTM (AGS), 2018 U.S. Dist. LEXIS 10939, at

19   *13 (S.D. Cal. Jan. 22, 2018).  Rather, to state a federal claim based on a falsified RVR, a

20   plaintiff must allege either that (1) the false RVR was used to subject plaintiff to criminal charges

21   in violation of due process (*Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001)) or (2)

22   the false RVR was issued in retaliation for the plaintiff's exercise of rights protected by the First

23   Amendment (*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

24           Plaintiff alleges that defendant Townsend issued a false RVR to him on or after October

25   29, 2022.  ECF No. 15 at 11.  He alleges that the RVR was "dropped to the counseling only

26   level."  *Id.*  These facts do not state either a *Devereaux* due process or a retaliation claim.  There

27   is no allegation that the RVR was used to subject plaintiff to criminal charges or that Townsend

28   issued the RVR because of plaintiff's protected conduct.  Thus, plaintiff's claim against

1    Townsend must be dismissed.

2        Plaintiff also alleges that Bradley issued him an RVR on June 30, 2023.  Plaintiff provides

3    no further information about the RVR, and the allegation alone is insufficient to support any

4    federal claim.

5        <u>ADA Claims</u>.  The ADA prohibits public entities, which includes prisons, from

6    discriminating against qualified disabled individuals by excluding them from or denying them the

7    benefits of services, programs, or activities of the public entities.  42 U.S.C. § 12132; *Duffy v.*

8    *Riveland*, 98 F.3d 447, 455-56 (9th Cir. 1996).  To allege a violation of the ADA, a plaintiff must

9    state facts showing that (1) he is disabled; (2) he is otherwise qualified to participate; (3) the

10   defendant prevented his participation in or denied him the benefits of a service, program, or

11   activity or otherwise subjected him to discrimination; (4) the defendant's decision was based on

12   plaintiff's disability.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

13       The ADA applies in the context of correctional facilities and prohibit disabled inmates

14   from being excluded from participation in inmate services, programs, or activities, including

15   medical programs, for which they are otherwise qualified.  *Pierce v. County of Orange*, 526 F.3d

16   1190, 1215 (9th Cir. 2008).  A plaintiff can allege disability discrimination in the provision of

17   inmate services, programs, or activities under the ADA or the Rehabilitation Act by pleading

18   either (1) discrimination based on disparate treatment or impact, or (2) denial of reasonable

19   modifications or accommodations.  *Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F. Supp. 962, 965

20   (N.D. Cal. 1998) ("[T]he ADA not only protects against disparate treatment, it also creates an

21   affirmative duty in some circumstances to provide special, preferred treatment, or 'reasonable

22   accommodation.'").

23       "[K]ey elements of an ADA … claim cannot be reconciled with medical treatment

24   decisions for the underlying disability."  *O'Guinn v. Nev. Dep't of Corr.*, 468 Fed. Appx. 651,

25   653 (9th Cir. 2012).[5]  Thus, a plaintiff's claim that he was discriminatorily denied mental health

26   treatment because of his mental health disability does not lie under the ADA, because the plaintiff

27

28       [5] A court may not prohibit or restrict the citation of federal judicial opinions … designated
     as "unpublished" … and issued on or after January 1, 2007."  Fed. R. App. Proc. 32.1.

1     needed the treatment only because he was disabled and was not, therefore, "otherwise qualified"

2     to receive the treatment.  *Id.  See also Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 1001-02

3     (E.D. Cal. 2017) (collecting cases).  In some circumstances, a denial of medical care that is "so

4     extreme as to suggest discriminatory refusal to accommodate a disability-related need, such as

5     when a disabled detainee is denied a broad range of medical services beyond those necessary for

6     treating his underlying disability" may state a cognizable ADA claim.

7          Plaintiff has not alleged any facts indicating that he was denied care beyond that necessary

8     to treat his mental health symptoms.  Accordingly, his ADA claims must be dismissed.

9          <u>Other Claims Lacking Sufficient Factual Allegations</u>.  Plaintiff's amended complaint

10     contains a number of claims that are lacking in sufficient factual support to state any cognizable

11     federal claim.  The following claims fall within this category and must be dismissed:

12        1.   Against ADA Counselor Cooper regarding plaintiff's housing in a "white-supremacist

13           6-man dorm" – Plaintiff alleges simply that this defendant refused to move him

14           following the housing decision.  ECF No. 15 at 11.  The allegation is insufficient to

15           state a claim under any of the federal legal provisions discussed above.

16        2.   Against Bradley and T. Cooper for the January 4, 2023 interaction – Plaintiff alleges

17           that Cooper told him he was supposed to be in a crisis bed and that Cooper and

18           Bradley threatened plaintiff with an RVR and a move to administrative segregation if

19           he did not sign "a document."  *Id.* at 13.  These allegations are insufficient to state a

20           claim under any of the federal legal provisions discussed above.

21          <u>Improperly-Joined Claims</u>.  It is well-settled that a claimant may not proceed with various

22     unrelated claims against separate defendants:

23             "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party
            asserting a claim to relief as an original claim, counterclaim, cross-

24             claim, or third-party claim, may join, either as independent or as
            alternate claims, as many claims, legal, equitable, or maritime, as the

25             party has against an opposing party.'  Thus multiple claims against a
            single party are fine, but Claim A against Defendant 1 should not be

26             joined with unrelated Claim B against Defendant 2."

27     *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff has not provided any facts from

28     which the court can conclude that his potentially cognizable claims are related to his claim against

1   defendant Alreano (for delaying medical care on January 15, 2023), his claim against Hutchison

2   (for improper mail handling on April 19, 2022), his claim against SATF correctional officer John

3   Doe (for losing plaintiff's legal property on August 28, 2023), and his claim against unidentified

4   correctional officers in MCSP's receiving area (for failing to give plaintiff his legal property in

5   August or September of 2023).  Accordingly, these claims must be dismissed as improperly

6   joined.

7           Summary.  In sum, plaintiff has stated potentially cognizable claims:

8           1.   Against Bradley for retaliation in violation of the First Amendment, and for deliberate

9                indifference/failure-to-protect in violation of the Eighth Amendment;

10          2.   Against Ullery for retaliation in violation of the First Amendment, and for deliberate

11               indifference to serious medical needs in violation of the Eighth Amendment;

12          3.   Against Smith for deliberate indifference to serious medical needs in violation of the

13               Eighth Amendment; and

14          4.   Against McCathy for failure-to-protect in violation of the Eighth Amendment.

15          Plaintiff's remaining claims must be dismissed, including the entirety of his claims against

16  defendants Duclos, Martin, Townsend, Charon, T. Cooper, ADA Counselor Cooper, P. Covello,

17  K. Allison, Hutchison, Alreano, and John Doe, and:

18          1.   Against any defendant for excessive force;

19          2.   Against any defendant for violation of the ADA;

20          3.   Against any defendant for violation of due process;

21          4.   Against any defendant for conduct in connection with the December 2, 2021 incident.

22          The court has already provided plaintiff with an opportunity to address the deficiencies in

23  his claims, indicating that further leave to amend would be futile.  *Williams v. California*, 764

24  F.3d 1002, 1018-19 (9th Cir. 2014) (affirming district court's finding that the "fact that Plaintiffs

25  have already had two chances to articulate clear and lucid theories underlying their claims, and

26  they failed to do so, demonstrates that amendment would be futile").  Accordingly, the case

27  should proceed on the amended complaint's potentially cognizable claims and the remaining

28  claims should be dismissed without leave to amend.

1    **IV.    Order and Recommendation**

2        Accordingly, it is hereby ORDERED that:

3        1.  Plaintiff's motion for screening (ECF No. 19) is GRANTED;

4        2.  Plaintiff's motion for appointment of counsel (ECF No. 21) is DENIED;

5        3.  The second amended complaint (ECF No. 15) states the following potentially

6            cognizable claims:

7                a.  Against Bradley for retaliation in violation of the First Amendment, and

8                    for deliberate indifference/failure-to-protect in violation of the Eighth

9                    Amendment;

10               b.  Against Ullery for retaliation in violation of the First Amendment, and

11                   for deliberate indifference to serious medical needs in violation of the

12                   Eighth Amendment;

13               c.  Against Smith for deliberate indifference to serious medical needs in

14                   violation of the Eighth Amendment; and

15               d.  Against McCathy for failure-to-protect in violation of the Eighth

16                   Amendment.

17       4.  The second amended complaint fails to state potentially cognizable claims for

18           violation of the ADA, due process, and excessive force and fails to state

19           potentially cognizable claims against defendants Duclos, Martin, Townsend,

20           Charon, T. Cooper, ADA Counselor Cooper, P. Covello, K. Allison, Hutchison,

21           Alreano, and John Doe.

22       It is RECOMMENDED that the court dismiss plaintiff's claims for excessive force,

23   violation of the ADA, and violation of due process against defendants Duclos, Martin, Townsend,

24   Charon, T. Cooper, ADA Counselor Cooper, P. Covello, K. Allison, Hutchison, Alreano, and

25   John Doe without further leave to amend and that the case proceed solely on the potentially

26   cognizable claims identified above.

27       These findings and recommendations are submitted to the United States District Judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

1   after being served with these findings and recommendations, any party may file written

2   objections with the court and serve a copy on all parties.  Such a document should be captioned

3   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

4   objections shall be served and filed within fourteen days after service of the objections.  The

5   parties are advised that failure to file objections within the specified time may waive the right to

6   appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez*

7   *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

8

9   Dated: August 12, 2025

    EDMUND F. BRENNAN
    UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28